Docusign Envelope ID: 3CED1AA8-00E3-46FE-9604-333DE35484BD

# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MISSOURI

| | | |
|---|---|---|
| SOLERA MULTIFAMILY, LLC, and<br>HICKORY INVESTORS, LLC, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | Case No. 4:25-cv-01877-JMB |
| v. | ) | |
| | ) | JURY TRIAL DEMANDED |
| JEFFREY J. TEGETHOFF, | ) | |
| TEGETHOFF DEVELOPMENT, LLC, | ) | |
| TEGETHOFF DEVELOPMENT | ) | |
| CO, LLC, JASON J. TEGETHOFF, as | ) | |
| Trustee for the AET 2021 IRREVOCABLE | ) | |
| TRUST, JEFFREY J. TEGETHOFF as | ) | |
| Trustee for the MONO SUERTE TRUST, | ) | |
| ANNA E. TEGETHOFF as Trustee for | ) | |
| the MONO SUERTE TRUST, | ) | |
| | ) | |
| Defendants. | ) | |

## SECOND VERIFIED AND AMENDED COMPLAINT FOR DAMAGES AND DECLARATORY RELIEF

Plaintiffs, Solera Multifamily, LLC, and Hickory Investors, LLC, for their Second Verified and Amended Complaint against Jeffrey J. Tegethoff, Tegethoff Development, LLC, Tegethoff Development Co, LLC, Jason J. Tegethoff as Trustee for the AET 2021 Irrevocable Trust, Jeffrey J. Tegethoff as Trustee for the Mono Suerte Trust, and Anna E. Tegethoff as Trustee for the Mono Suerte Trust, state:

### INTRODUCTION

For years, Jeffrey J. Tegethoff has held himself out as a sophisticated real estate developer, capable of developing "trophy assets with a 'develop to own forever' mindset."[1]  Instead, Mr. Tegethoff has engaged in a pattern of deception by cultivating investor trust, soliciting funds under

---

[1] https://tegethoffdevelopment.com/ (last accessed December 18, 2025).

ME1\59457812.v1

Docusign Envelope ID: 3CED1AA8-00E3-46FE-9604-333DE35484BD

the guise of legitimate business ventures, and then diverting those very same funds to advance his luxurious lifestyle and personal financial interests. Plaintiffs and related entities were induced by Mr. Tegethoff to enter into several real estate development projects in Missouri and provided him (and his affiliated entities) with significant capital. Plaintiffs now know that, rather than using Plaintiffs' investment funds to develop the projects at issue, Defendants took their money and used it to fund Defendants' unrelated business projects and Mr. Tegethoff's lavish lifestyle.

## NATURE OF THE ACTION

1.      This is an action for declaratory relief and damages for breach of contract, breach of fiduciary duty, fraud in the inducement, fraud, negligent misrepresentation, theft/conversion, unjust enrichment, and securities fraud arising under Missouri law.

## PARTIES, JURISDICTION, AND VENUE

2.      Plaintiff Solera Multifamily, LLC ("Solera Multifamily"), a member of Old Hickory Partners, LLC, is an Indiana limited liability company incorporated under the laws of the State of Indiana.

3.      Solera Multifamily has 17 members: Amanda K. Wagner, Solera Equity Capital, LLC, Evalia Enterprises, LLC, James H. McDaniel Revocable Trust, WJF Properties, LLC, Steven R. Townsend, Ernest E. Baird, Karla M. Ajamie, Lara L. Baird, Scott D. Curson, Sara A. Curson, Sharon E. Taylor, Tracy D. Godby, Rik Smits, PSRB OHV, LLC, Jeffrey A. Townsend, and Lawrence E. Lloyd.

4.      Amanda K. Wagner, Ernest E. Baird, Karla M. Ajamie, Sharon E. Taylor, Tracy D. Godby, and Jeffrey A. Townsend are citizens of the State of Indiana.

5.      Steven R. Townsend and Lawrence E. Lloyd are citizens of the State of Michigan.

6.      Lara L. Baird is a citizen of the State of Ohio.

2

ME1\59457812.v1

Docusign Envelope ID: 3CED1AA8-00E3-46FF-9604-333DE35484BD

7.      Scott D. Curson and Sara A. Curson are citizens of the State of Georgia.

8.      Rik Smits is a citizen of the State of Arizona.

9.      Solera Equity Capital, LLC is an Indiana limited liability company incorporated under the laws of the State of Indiana.

10.     Solera Equity Capital, LLC has two members: Shawn N. Bush and Jeffrey N. Bush.

11.     Shawn N. Bush and Jeffrey  N. Bush are citizens of the State of Indiana.

12.     Evalia Enterprises, LLC is an Illinois limited liability company incorporated under the laws of the State of Illinois.

13.     Evalia Enterprises, LLC has one member: Jerry L. McDaniel.

14.     Jerry L. McDaniel is a citizen of the State of Illinois.

15.     James H. McDaniel Revocable Trust is a trust administered in the state of Illinois.

16.     James H. McDaniel Revocable Trust has one trustee: Jerry L. McDaniel.

17.     Jerry L. McDaniel is a citizen of the State of Illinois.

18.     WJF Properties, LLC is an Illinois limited liability company incorporated under the laws of the State of Illinois.

19.     WJF Properties, LLC has one member: William J. Fecht.

20.     William J. Fecht is a citizen of the State of Illinois.

21.     PSRB OHV, LLC is an Indiana limited liability company incorporated under the laws of the State of Indiana.

22.     PSRB OHV, LLC has three members: George M. Plews, Jeffrey D. Featherstun, and Tonya L. Bond.

23.     George M. Plews, Jeffrey D. Featherstun, and Tonya L. Bond are citizens of the State of Indiana.

3

ME1\59457812.v1

Docusign Envelope ID: 3CED1AA8-00E3-46FE-9604-333DE35484BD

24.     Plaintiff Hickory Investors, LLC ("Hickory Investors"), a member of Old Hickory Partners, LLC, is an Indiana limited liability company incorporated under the laws of the State of Indiana.

25.     Hickory Investors has three members: Shawn N. Bush, Jeffrey N. Bush, and the Jeffrey N. Bush Spouse and Descendants Trust.

26.     The Jeffrey N. Bush Spouse and Descendants Trust has one trustee: Shawn N. Bush.

27.     Shawn N. Bush is a citizen of the State of Indiana.

28.     Jeffrey N. Bush is also a citizen of the State of Indiana.

29.     Defendant Jeffrey J. Tegethoff ("Mr. Tegethoff"), manager of Old Hickory Partners, LLC, is a citizen of the State of Missouri.

30.     Defendant Tegethoff Development, LLC ("Tegethoff Development"), a member of Old Hickory Partners, LLC, is a Missouri limited liability company incorporated under the laws of the State of Missouri.

31.     Tegethoff Development has one member: Mr. Tegethoff, who is a citizen of the State of Missouri.

32.     The AET 2021 Irrevocable Trust (the "AET Trust"), a member of Old Hickory Partners, LLC, is administered in the State of Missouri and its trustee is Jason J. Tegethoff ("Mr. Jason Tegethoff").

33.     Mr. Jason Tegethoff  is a citizen of the State of Missouri.

34.     Upon information and belief, Mr. Tegethoff was the trustee of the AET Trust at the time of the events giving rise to this complaint.

35.     Mr. Tegethoff is the current beneficiary of the AET Trust.

ME1\59457812.v1

Docusign Envelope ID: 3CED1AA8-00E3-46FE-9604-333DE35484BD

36. The Mono Suerte Trust is administered in the State of Missouri and its trustees are Mr. Tegethoff and Anna E. Tegethoff ("Mrs. Tegethoff").

37. Mr. Tegethoff and Mrs. Tegethoff are both citizens of the State of Missouri.

38. Mr. Tegethoff and Mrs. Tegethoff are the current beneficiaries of the Mono Suerte Trust.

39. Tegethoff Development Co, LLC ("Tegethoff Development Co") is a Missouri limited liability company organized under the laws of the State of Missouri.

40. Tegethoff Development Co has one member: Mr. Tegethoff, who is a citizen of the State of Missouri.

41. This Court has original subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(a) because Plaintiffs and Defendants are citizens of different states and the amount in controversy is in excess of $75,000. Plaintiffs are residents of and domiciled in Indiana, Illinois, Michigan, Ohio, Georgia, and Arizona and Defendants are residents of and domiciled in Missouri.

42. This Court has personal jurisdiction over Mr. Tegethoff because Mr. Tegethoff is domiciled in Missouri.

43. This Court has personal jurisdiction over Tegethoff Development because Tegethoff Development is domiciled in Missouri.

44. This Court has personal jurisdiction over Mr. Jason Tegethoff because Mr. Jason Tegethoff is domiciled in Missouri.

45. This Court has personal jurisdiction over Mrs. Tegethoff because Mrs. Tegethoff is domiciled in Missouri.

46. This Court has personal jurisdiction over Tegethoff Development Co because Tegethoff Development Co is domiciled in Missouri.

5

ME1\59457812.v1

Docusign Envelope ID: 3CED1AA8-00E3-46FE-9604-333DE35484BD

47.     Plaintiffs' claims for declaratory relief are authorized by 28 U.S.C. §§ 2201–02, by Federal Rule of Civil Procedure 57, and by the inherent equitable powers of this Court.

48.     Venue in this Court is proper under 28 U.S.C. § 1391 (b)(1), (c)(1)-(2), and (d) in that Defendants are all residents of this District and all Defendants are subject to personal jurisdiction in this District.

## FACTS COMMON TO ALL ALLEGATIONS

49.     Together, Shawn N. Bush and Jeffrey N. Bush operate Hickory Investors and Solera Equity Capital, LLC, which is the manager of Solera Multifamily. The Bushes have more than sixty years of combined experience in accounting, commercial real estate, and asset management.

50.     In November 2018, the Bushes were introduced to Mr. Tegethoff by a mutual acquaintance. Mr. Tegethoff subsequently solicited their interest in investing in real estate projects, which the Bushes did through several entities.

### A.     MR. TEGETHOFF INDUCES PLAINTIFFS TO PURCHASE INTERESTS IN OLD HICKORY PARTNERS

51.     In early 2022, still believing their investments in the other projects to be successful, Shawn Bush spoke with Mr. Tegethoff about investing in a real estate project in St. Peters, Missouri to be known as Old Hickory Village (the "Project").

52.     On March 2, 2022, Mr. Tegethoff provided Shawn Bush with information regarding the Project and represented that Mr. Tegethoff would be the manager of Old Hickory Partners, LLC ("Old Hickory Partners") and that he had the authority to sell membership interests in Old Hickory Partners (collectively, the "Offering Memorandum"), a copy of which is attached here as Exhibit A.

53.     In the Offering Memorandum and in his communications with Shawn Bush, Mr. Tegethoff offered investors capital appreciation in Old Hickory Partners, which would invest in

ME1\59457812.v1

Docusign Envelope ID: 3CED1AA8-00E3-46FE-9604-333DE35484BD

the construction of the Project as the general partner of Old Hickory Village, LP (the "Limited Partnership").

54.     The Project would be structured as follows:



55.     Mr. Tegethoff and Shawn Bush discussed the specifics of the sale and purchase of membership interests in Old Hickory Partners.

56.     During his discussions with Shawn Bush, Mr. Tegethoff confirmed to Shawn Bush that he, Mr. Tegethoff, would be the manager of Old Hickory Partners.

57.     On or about March 10, 2022, Shawn Bush and Mr. Tegethoff, as well as another Tegethoff Development employee, toured the proposed Project site.

58.     On June 4, 2022, at 12:25 p.m., Mr. Tegethoff provided copies of the operating agreement for Old Hickory Partners to Shawn Bush and other investors. A true and accurate copy of the executed Old Hickory Partners' Operating Agreement (the "Operating Agreement") is attached here as Exhibit B.

59.     In the operating agreement, Mr. Tegethoff, as manager of Old Hickory Partners, specifically represented that he would be authorized to act on behalf of Old Hickory Partners and that, "as advisable or appropriate for [Old Hickory Partners]," he would "consummate" the

7

Docusign Envelope ID: 3CED1AA8-00E3-46FE-9604-333DE35484BD

contributions to Old Hickory Partners and that Old Hickory Partners would "invest in [the Limited Partnership] as a general partner." (Ex. B, Operating Agreement, p. 2, § 1.1(B)).

60.     Indeed, over the course of written and verbal communications between March to July 2022, Mr. Tegethoff, personally, as manager of Old Hickory Partners, and on behalf of Tegethoff Development, a member of Old Hickory Partners, repeatedly represented that investor funds invested in  Old Hickory Partners would be used solely to invest in the Limited Partnership.

61.     Despite present knowledge that he would use Plaintiffs' investment in Old Hickory Partners for purposes unrelated to the Project, Mr. Tegethoff did not disclose this in order to induce Plaintiffs to invest in Old Hickory Partners and to obtain these funds for the benefit of himself and his related entities.

62.     Mr. Tegethoff knew that if he told Plaintiffs the truth, that he was using the monies to pay personal and unrelated business expenses, Plaintiffs would not have invested in Old Hickory Partners.

63.     As the manager of Old Hickory Partners, Mr. Tegethoff  owed a duty to Plaintiffs to use Plaintiffs' capital contributions as he represented—to invest in the Limited Partnership.

64.     At the time Mr. Tegethoff made representations to Shawn Bush regarding Old Hickory Partners, Mr. Tegethoff knew his statements were untrue and that he would use any funds collected for purposes unrelated to Old Hickory Partners and the Limited Partnership, including for his own benefit and/or for the benefit of the AET and Mono Suerte Trusts, Tegethoff Development, and Tegethoff Development Co.

65.     Consistent with his representations used to induce Plaintiffs' investment, the terms of the Operating Agreement required Mr. Tegethoff to use the capital contributions to Old Hickory Partners solely to invest in the Limited Partnership. If he did not, Mr. Tegethoff had a duty to

8

ME1\59457812.v1

Docusign Envelope ID: 3CED1AA8-00E3-46FE-9604-333DE35484BD

inform the members of Old Hickory Partners, including Plaintiffs, that he would not be using the capital contributions to invest in the Limited Partnership.

66.     Mr. Tegethoff further had a duty to act for the benefit of the members of Old Hickory Partners, including but not limited to, the interests of Plaintiffs.

67.     Based on Mr. Tegethoff's written and verbal representations, the site visit, and Mr. Tegethoff's representations in the Offering Memorandum and the Operating Agreement, Shawn Bush agreed to purchase membership interests in Old Hickory Partners via Plaintiffs.

68.     On or about July 5, 2022, in reliance on Mr. Tegethoff's representations, Solera Multifamily and Hickory Investors contributed $2,000,000 and $450,000, respectively, to Old Hickory Partners, in exchange for membership interests in Old Hickory Partners.

69.     Plaintiffs wired the funds to Old Hickory Partners' account at CIBC Bank.

70.     On or about July 11, 2022, Plaintiffs, Mr. Tegethoff, Tegethoff Development, and the AET Trust, among others, executed the Old Hickory Partners' Operating Agreement. (Ex. B, Operating Agreement).

71.     To become a member of Old Hickory Partners, each member was required to make an initial capital contribution as indicated on Exhibit A of the Operating Agreement. (Ex. B, Operating Agreement, p. 9, § 2.1).

72.     Solera Multifamily's initial capital contribution was $2,000,000 in exchange for becoming a Class A member, an initial ownership percentage of 22.22% in Old Hickory Partners, which was comprised of a Tier 1 ownership percentage of 12.14%, and a residual ownership percentage of 8.09%. (Ex. B, Operating Agreement, p. 46, Ex. A).

73.     Hickory Investors' initial capital contribution was $450,000 in exchange for becoming a Class B member, an initial ownership percentage of 5% in Old Hickory Partners,

ME1\59457812.v1

which consisted of a Tier 1 ownership percentage of 3.34%, and a residual ownership percentage of 2.67%. (Ex. B, Operating Agreement, p. 46, Ex. A).

74. Tegethoff Development's initial capital contribution was purported to be $750,000 in exchange for becoming a Class B member, an initial ownership percentage of 8.33% in Old Hickory Partners, which consisted of a Tier 1 ownership percentage of 5.56%, and a residual ownership percentage of 4.45%. (Ex. B, Operating Agreement, p. 46, Ex. A).

75. The AET Trust was designated as a Class C member which would receive a Tier 1 ownership percentage of 30.62%, and a residual ownership percentage of 42.92% in Old Hickory Partners. (Ex. B, Operating Agreement, p. 46, Ex. A).

76. As a Class C member, the AET Trust did not make any capital contributions to Old Hickory Partners. (Ex. B, Operating Agreement, p. 46, Ex. A).

77. The total initial capital contributions by all investors in Old Hickory Partners was to be $9,000,000. (Ex. B, Operating Agreement, p. 46, Ex. A).

78. Pursuant to section 1.6 of the Operating Agreement, Old Hickory Partners' manager was Mr. Tegethoff. (Ex. B, Operating Agreement, p. 2, § 1.6).

79. As manager of Old Hickory Partners, Mr. Tegethoff was vested with the "exclusive and plenary right, authority, and responsibility to manage and conduct the business and affairs of [Old Hickory Partners] and to enter into transactions on behalf of [Old Hickory Partners] . . . ." (Ex. B, Operating Agreement, p. 24, § 6.1(A)).

80. As manager of Old Hickory Partners, Mr. Tegethoff acted with complete control over the funds invested into Old Hickory Partners, creating a fiduciary relationship between Mr. Tegethoff and Plaintiffs.

10

ME1\59457812.v1

81.     As manager of Old Hickory Partners, Mr. Tegethoff exercised complete control over the funds invested into Old Hickory Partners, establishing Mr. Tegethoff in a position of overwhelming influence over Plaintiffs and their investment in Old Hickory Partners.

82.     As illustrated by the allegations set forth *infra*, Mr. Tegethoff so dominated and controlled Old Hickory Partners (and material information about Old Hickory Partners' operations) that its members were unaware until recently of material actions taken by Mr. Tegethoff in contravention of the Operating Agreement and in breach of his fiduciary duties.

83.     Mr. Tegethoff exercised his dominance and control by, among other things, limiting and controlling the financial and operational information Old Hickory Partners' members received, taking material actions without member consent, and limiting communications between members.

84.     To this day, Mr. Tegethoff continues to conceal material information about Old Hickory Partners' finances and operations from Plaintiffs.

85.     As manager of Old Hickory Partners, Mr. Tegethoff is in exclusive possession of the facts and circumstances regarding Old Hickory Partners' financial situation.

86.     The Operating Agreement provided that Mr. Tegethoff could be removed as manager "at any time for Misconduct by a decision to do so by any Member." (Ex. B, Operating Agreement, p. 24, § 6.1(B)).

87.     The Operating Agreement defined "Misconduct" as an intentional breach of the Operating Agreement and/or bad faith or willful misconduct. (Ex. B, Operating Agreement, pp. 28–29, § 6.6(A)).

88.     Although Mr. Tegethoff was given broad authority, the Operating Agreement placed several restrictions on his authority, including that Mr. Tegethoff could not, without the consent of all members, "possess [Old Hickory Partners'] property, or assign rights in specific

11

ME1\59457812.v1

[Old Hickory Partners' property] in trust for creditors . . . ." (Ex. B, Operating Agreement, p. 26, § 6.3(A)(2)).

89. The Operating Agreement also prevented Mr. Tegethoff from taking certain actions on behalf of Old Hickory Partners with respect to the Limited Partnership. (Ex. B, Operating Agreement, p. 26, § 6.3(A)(8)).

90. Moreover, pursuant to section 6.3(B) of the Operating Agreement, matters considered "Major Decisions" required "Major Decision Approval," which meant that a certain number of membership interests in Old Hickory Partners were required to approve the action. (Ex. B, Operating Agreement, p. 27, § 6.3(B)(2)).

91. The Operating Agreement defined "Major Decision Approval" as "the approval of a Company action or decision by the Class A and Class B Members, voting together as a single class, owning more than sixty-five percent (65%) of the Initial Ownership Percentages held by Members who are not then in Voting Default, which must also include the approval of one or more Manager." (Ex. B, Operating Agreement, p. 8, § 1.9(BB)).

92. Section 6.3(B)(2) of the Operating Agreement provided that "agree[ing] to vote in favor of, on behalf of [Old Hickory Partners] under the [Old Hickory Village Limited Partnership Agreement]" and any amendments thereto were decisions requiring "Major Decision Approval." (Ex. B, Operating Agreement, 27. 8, § 6.3(B)(2)(4)).

93. Section 5.4 of the Operating Agreement provided that funds of Old Hickory Partners were to be deposited in a bank account and that Old Hickory Partners' funds or assets were not to be commingled with those of any other person or entity. (Ex. B, Operating Agreement, p. 23, § 5.4).

12

ME1\59457812.v1

Docusign Envelope ID: 3CED1AA8-00E3-465E-9604-333DE35484BD

94. According to the Operating Agreement, Tegethoff Development Co, "an Affiliate of an Interest Holder," would receive an asset management fee and a development fee from the Limited Partnership for Tegethoff Development Co's "duties overseeing the site planning, entitlement, and construction of the Project and rendering other duties associated with the management of the Project." (Ex. B, Operating Agreement, p. 5, § 1.9(E); *id.* at p. 6, § 1.9(Q)).

95. On or about July 18, 2022, Old Hickory Partners and RGA Real Estate Investments LLC ("RGA") entered into the Agreement of Limited Partnership of Old Hickory Village, LP (the "Limited Partnership Agreement") to form the Limited Partnership, a copy of which is attached here as Exhibit C.

96. Under the Limited Partnership Agreement, Old Hickory Partners served as the general partner of Old Hickory Village and RGA served as the limited partner. (Ex. C, Limited Partnership Agreement).

97. According to the Limited Partnership Agreement, RGA's committed capital contribution was $23,843,216.05 and its initial contribution was $3,792,247.15. (Ex. C, Limited Partnership Agreement, Sch. A).

98. According to the Limited Partnership Agreement, Old Hickory Partners' committed capital contribution was $8,685,045.95 and its initial contribution was $1,381,350.60. (Ex. C, Limited Partnership Agreement, Sch. A).

99. According to the Limited Partnership Agreement, both RGA and Old Hickory Partners were required to make contributions to the Limited Partnership on a periodic and pro-rata basis. (Ex. C, Limited Partnership Agreement).

ME1\59457812.v1

100. Schedule A of the Limited Partnership Agreement suggested Old Hickory Partners' initial capital contribution included the land for the Project (having a value of $4,000,000). (Ex. C, Limited Partnership Agreement, Sch. A.).

101. This is not accurate as the land was ultimately acquired by other means.

102. The Limited Partnership Agreement identified "[Old Hickory Partners], by and through [Tegethoff Development Co (or another approved Affiliate of [Old Hickory Partners])]" as the Project's "Development Manager." (Ex. C, Limited Partnership Agreement, p. 16, § 7.05(a)(i)).

103. According to the Limited Partnership Agreement, Old Hickory Partners, through Tegethoff Development Co, as "development manager," was required to "use its commercially reasonable efforts to cause the Project to be developed and constructed in an economical and efficient manner . . . ." (Ex. C, Limited Partnership Agreement, p. 16, § 7.05(a)(i)).

104. Despite any other agreements, Old Hickory Partners remained "solely and primarily responsible and liable for the development and construction of the Project." (Ex. C, Limited Partnership Agreement, p. 16, § 7.05(a)(i)).

105. In exchange for its development services, Old Hickory Partners, or Tegethoff Development Co, was entitled to payment of a development fee in the amount of $3,500,000. (Ex. C, Limited Partnership Agreement, p. 19, § 7.11(a)(i) ("In addition, the [Limited Partnership] shall pay [Old Hickory Partners] or its Affiliates (including [Tegethoff Development Co]) . . . the following fees . . . .")). *See also* (Ex. B, Operating Agreement, p. 5, § 1.9(E); *id.* at p. 6, § 1.9(Q)).

106. According to the Limited Partnership Agreement, Mr. Tegethoff was the "Sponsor" of the Limited Partnership. (Ex. C, Limited Partnership Agreement, p. 5).

14

ME1\59457812.v1

107.    The Limited Partnership Agreement further provided that Old Hickory Partners must remain under "Legal Control" of the Sponsor during the term of the Limited Partnership. (Ex. C, Limited Partnership Agreement, p. 21, § 7.17).

108.    The Limited Partnership Agreement further required Mr. Tegethoff, as the Sponsor, to own, "directly or indirectly, at least eight and one-quarter percent (8.25%) of the beneficial ownership interests in the General Partner." (Ex. C, Limited Partnership Agreement, p. 21, § 7.17).

109.    "Legal Control" was defined by the Limited Partnership Agreement as "the power to exercise the authority, management and/or policies of [Old Hickory Partners], either directly or indirectly, both as an entity and as owner of its Partnership Interest and as the manager or managing member of the General Partner . . . ." (Ex. C, Limited Partnership Agreement, p. 4).

110.    Therefore, removal of Mr. Tegethoff as manager of Old Hickory Partners would necessarily mean Mr. Tegethoff, as Sponsor, would no longer have Legal Control over Old Hickory Partners and would constitute a default of the Limited Partnership Agreement by Old Hickory Partners, putting Old Hickory Partners' involvement in the Project in jeopardy.

**B.    MR. TEGETHOFF IMMEDIATELY MISAPPROPRIATES PLAINTIFFS' FUNDS FOR HIS OWN USE**

*The Misappropriation*

111.    Taking monies from one project and transferring them to Tegethoff Development is a regular practice of Mr. Tegethoff's—Old Hickory Partners is no exception.

15

Docusign Envelope ID: 3CED1AA8-00E3-465E-9604-333DE35484BD



16

Docusign Envelope ID: 3CED1AA8-00E3-465E-9604-333DE35484BD



17

Docusign Envelope ID: 3CED1AA8-00E3-465E-9604-333DE35484BD



18

ME1\59457812.v1

Docusign Envelope ID: 3CED1AA8-00E3-465E-9604-333DE35484BD



143.    Neither Mr. Tegethoff nor Tegethoff Development disclosed this fact when inducing Plaintiffs to invest in "Old Hickory Partners," however.

144.    Mr. Tegethoff's actions are in violation of Section 5.4 of Old Hickory Partners' Operating Agreement, which prohibits commingling Old Hickory Partners' funds with the funds of any other person. (Ex. B, Operating Agreement, p. 23, § 5.4).

19

ME1\59457812.v1

Docusign Envelope ID: 3CED1AA8-00E3-465E-9604-333DE35484BD

145. Plaintiffs did not consent to "investing" in Mr. Tegethoff or Tegethoff Development nor did Plaintiffs receive the opportunity to evaluate the risks of "investing" in Tegethoff Development.

146. Plaintiffs did not consent to Mr. Tegethoff commingling Old Hickory Partners' funds with Tegethoff Development's funds nor did Plaintiffs consent to Mr. Tegethoff using Old Hickory Partners' funds to finance his lavish lifestyle or satisfy his (or Tegethoff Development's) other obligations.

147. Mr. Tegethoff and Tegethoff Development did not disclose the commingling or use of Plaintiffs' funds at any time.

### The "Loans" and "Other Current Asset"

148. According to Adam Yohler, a CPA and the former chief financial officer for Tegethoff Development, it was Mr. Tegethoff's practice to take cash from projects like the Project and transfer it to Tegethoff Development for other uses, at Mr. Tegethoff's discretion.

149. According to Mr. Yohler, Mr. Tegethoff considered the transferred funds a "loan" from the projects to Tegethoff Development.

150. Mr. Yohler testified these undocumented "loans" would be used to pay unrelated Tegethoff Development expenses, as well as Mr. Tegethoff's personal expenses.

151. Neither Plaintiffs nor Old Hickory Partners consented to the making of "loans" to Tegethoff Development.

152. To track the "loans," Mr. Tegethoff uses the designation "other current asset" on the books and records of the affected entities, including Old Hickory Partners.

ME1\59457812.v1

Docusign Envelope ID: 3CFD1AA8-00E3-465E-9604-333DE35484BD

153.    After using Old Hickory Partners' funds, Mr. Tegethoff would simply hope that other Tegethoff Development schemes and projects would result in payouts large enough to repay the Tegethoff Development "loans" from Old Hickory Partners.

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████

155.    Mr. Yohler further testified that when a development draw would become due, Mr. Tegethoff (or Tegethoff Development) would attempt to transfer the cash back.

156.    Mr. Yohler has previously testified that Mr. Tegethoff took millions of dollars from this specific Project and transferred the money to Tegethoff Development, which used the funds for purposes unrelated to the Project.

157.    In fact, on February 11, 2025, Mr. Yohler testified that Tegethoff Development had not repaid Old Hickory Partners in full (at least as of that date). This was new information to the Plaintiffs.

158.    Since then, Mr. Tegethoff himself has testified, under oath, and confirmed Mr. Yohler's testimony.

159.    At a hearing on January 15, 2026 in Indiana litigation (discussed further *infra*), Mr. Tegethoff testified that as of year-end 2024, Tegethoff Development owed Old Hickory Partners money:

Questioning of Mr. Tegethoff by Mr. Grant

Q:    Turning to the next page of this document, there's a series of liabilities, and I'm looking at other current liabilities as of year-end of 2024 of Tegethoff Development. There's a due Old Hickory Partners. Do you see that?

A:    Uh-huh [INAUDIBLE RESPONSE TO THE AFFIRMATIVE].

21

ME1\59457812.v1

Docusign Envelope ID: 3CED1AA8-00E3-465E-9604-333DE25484BD

Q:     Is that the money that at year-end Tegethoff Development owes to Old Hickory Partners?

A:     It would have been as of December 31st, 2024.

Q:     Is that still due and owing?

A:     I don't know.

Q:     Okay

*See* (Exhibit F, Excerpt from Jan. 15, 2026, Transcript, 49:15-24).

160.    This "owed" money is the unrecorded, unauthorized "loan" of Plaintiffs' investment, purportedly made into Old Hickory Partners, that instead went into Tegethoff Development, and then to Mr. Tegethoff personally and to other Tegethoff Development projects.

161.    Although he is the manager of Old Hickory Partners and the sole member of Tegethoff Development, Mr. Tegethoff further testified that he did not know if money was still due and owing Old Hickory Partners from Tegethoff Development. *See id.* at 49:22–24.



ME1\59457812.v1

████████████████████████████████████████████████

### C. MR. TEGETHOFF IS FORCED TO INITIATE A CAPITAL CALL

167. The Limited Partnership closed on its construction loan with Commerce Bank in October 2022.

168. However, in early 2023, it was determined that development costs would be more than $10 million higher than anticipated.

169. Therefore, pursuant to the Limited Partnership Agreement, Old Hickory Partners was responsible for obtaining and contributing its share of the additional $10 million required for development costs.

170. On or about April 17, 2023, Mr. Tegethoff informed members of Old Hickory Partners that they would be subject to a capital call to fund Old Hickory Partners' portion of the increased costs.

171. According to Mr. Tegethoff and his team, Old Hickory Partners needed to fund $1,463,460.78 to meet a final $10,463,460.78 in total capital required at the Limited Partnership level.

172. On May 23, 2023, as required by the capital call, Solera Multifamily and Hickory Investors duly paid their portion in the amounts of $325,213.51 and $23,173.04, respectively.

173. On or about July 31, 2023, to reflect the capital call, the members of Old Hickory Partners amended and restated the Operating Agreement (the "Revised Operating Agreement"), a copy of which is attached here as Exhibit I.

174. The Revised Operating Agreement provides Solera Multifamily's initial capital contribution was now $2,325,213.51 in exchange for becoming a Class A member, an initial

23

ME1\59457812.v1

ownership percentage of 22.22% in Old Hickory Partners, which consisted of a Tier 1 ownership percentage of 12.14%, and a residual ownership percentage of 8.09%. (Ex. I, Revised Operating Agreement, p. 47, Ex. A).

175. The Revised Operating Agreement provides Hickory Investors' initial capital contribution was now $523,173.04 in exchange for becoming a Class B member, an initial ownership percentage of 5% in Old Hickory Partners, which consisted of a Tier 1 ownership percentage of 3.34%, and a residual ownership percentage of 2.67%. (Ex. I, Revised Operating Agreement, p. 47, Ex. A).

176. The Revised Operating Agreement provides Tegethoff Development's supposed initial capital contribution was now $871,955.07 in exchange for becoming a Class B member, an initial ownership percentage of 8.33% in Old Hickory Partners, which consisted of a Tier 1 ownership percentage of 5.56%, and a residual ownership percentage of 4.45%. (Ex. I, Revised Operating Agreement, p. 47, Ex. A).

177. The AET Trust was again designated as a Class C member which would receive a Tier 1 ownership percentage of 30.62%, and a residual ownership percentage of 42.92% in Old Hickory Partners. (Ex. I, Revised Operating Agreement, p. 47, Ex. A).

178. As a Class C member, the AET Trust again made no capital contributions to Old Hickory Partners. (Ex. I, Revised Operating Agreement, p. 47, Ex. A).

179. The Revised Operating Agreement maintains Mr. Tegethoff as manager of Old Hickory Partners. (Ex. I, Revised Operating Agreement, p. 4, § 1.6).

180. As manager of Old Hickory Partners, Mr. Tegethoff is still vested with the "exclusive and plenary right, authority, and responsibility to manage and conduct the business and

24

ME1\59457812.v1

affairs of [Old Hickory Partners] and to enter into transactions on behalf of [Old Hickory Partners] . . . ." (Ex. I, Revised Operating Agreement, p. 24, § 6.1(A)).

181.    As manager of Old Hickory Partners, Mr. Tegethoff acts with complete control over the funds invested into Old Hickory Partners, creating a fiduciary relationship between Mr. Tegethoff and Plaintiffs.

182.    As manager of Old Hickory Partners, Mr. Tegethoff so dominated and controlled the entity such that Plaintiffs were—and still are—prevented from obtaining material information about Old Hickory Partners' operations and finances.

183.    As manager of Old Hickory Partners, Mr. Tegethoff exercises complete control over the funds invested into Old Hickory Partners, establishing Mr. Tegethoff in a position of overwhelming influence.

184.    As manager of Old Hickory Partners, Mr. Tegethoff is in exclusive possession of the facts and circumstances regarding Old Hickory Partners' financial situation

185.    The Revised Operating Agreement provides that Mr. Tegethoff may be removed as manager "at any time for Misconduct by a decision to do so by any Member." (Ex. I, Revised Operating Agreement, p. 24, § 6.1(B)).

186.    The Revised Operating Agreement defines "Misconduct" as an intentional breach of the Revised Operating Agreement and/or bad faith or willful misconduct. (Ex. I, Revised Operating Agreement, p. 29, § 6.6(A)).

187.    Although Mr. Tegethoff was given broad authority, the Revised Operating Agreement places several restrictions on his authority, including that Mr. Tegethoff cannot, without the consent of all members, "possess [Old Hickory Partners'] property, or assign rights in

25

ME1\59457812.v1

specific [Old Hickory Partners' property] in trust for creditors . . . ." (Ex. I, Revised Operating Agreement, p. 26, § 6.3(A)(2)).

188.    The Revised Operating Agreement also prevents Mr. Tegethoff from taking certain actions on behalf of Old Hickory Partners with respect to the Limited Partnership. (Ex. I, Revised Operating Agreement, p. 27, § 6.3(A)(8)).

189.    Moreover, pursuant to section 6.3(B) of the Revised Operating Agreement, matters considered "Major Decisions" require "Major Decision Approval," which means that a certain number of membership interests in Old Hickory Partners are required to approve the action. (Ex. I, Operating Agreement, p. 27, § 6.3(B)(2)).

190.    The Revised Operating Agreement defines "Major Decision Approval" as "the approval of a Company action or decision by the Class A and Class B Members, voting together as a single class, owning more than sixty-five percent (65%) of the Initial Ownership Percentages held by Members who are not then in Voting Default, which must also include the approval of one or more Manager." (Ex. I, Revised Operating Agreement, p. 8, § 1.9(BB)).

191.    Section 6.3(B)(2) of the Revised Operating Agreement provides "agree[ing] to vote in favor of, on behalf of [Old Hickory Partners] under the [Old Hickory Village Limited Partnership Agreement]" and any amendments thereto is a decision requiring "Major Decision Approval." (Ex. I, Revised Operating Agreement, 27. 8, § 6.3(B)(2)(4)).

192.    Section 5.4 of the Revised Operating Agreement provides that funds of Old Hickory Partners are to be deposited in a bank account and that Old Hickory Partners' funds or assets are not to be commingled with those of any other person or entity. (Ex. I, Revised Operating Agreement, p. 24, § 5.4).

26

ME1\59457812.v1

Docusign Envelope ID: 3CED1AA8-00E3-465E-9604-333DE35484BD

193. According to the Revised Operating Agreement, Tegethoff Development Co, "an Affiliate of an Interest Holder," continues to receive an asset management fee and a development fee from the Limited Partnership for Tegethoff Development Co's "duties overseeing the site planning, entitlement, and construction of the Project and rendering other duties associated with the management of the Project." (Ex. I, Revised Operating Agreement, p. 5, § 1.9(E); *id.* at p. 6, § 1.9(Q)).

194. On July 31, 2023, to reflect the capital call, the Limited Partnership also revised the Limited Partnership Agreement (the "Revised Limited Partnership Agreement"), a copy of which is attached as Exhibit J.

195. According to the Revised Limited Partnership Agreement, RGA's committed capital contribution was $28,725,531, and its total capital contribution was $28,725,531. (Ex. J, Revised Limited Partnership Agreement, Sch. A).

196. According to the Revised Limited Partnership Agreement, Old Hickory Partners' committed capital contribution was $10,463,461, and its total capital contribution was $10,463,461. (Ex. J, Revised Limited Partnership Agreement, Sch. A).

197. Like with the Limited Partnership Agreement, Schedule A of the Revised Limited Partnership Agreement suggests Old Hickory Partners' initial capital contribution included the land for the Project (having a value of $4,000,000). (Ex. J, Revised Limited Partnership Agreement, Sch. A).

198. This is not accurate as the land was ultimately acquired by other means.

199. Although Old Hickory Partners, through Tegethoff Development Co, was still entitled to receive a development fee, the development fee was reduced to $2,500,000. (Ex. J, Revised Limited Partnership Agreement, p. 2, § 1(f)).

ME1\59457812.v1

200.   According to the Revised Limited Partnership Agreement, Mr. Tegethoff was still the "Sponsor" of the Limited Partnership. (Ex. J, Revised Limited Partnership Agreement, p. 5).

201.   The Revised Limited Partnership Agreement still provided that Old Hickory Partners must remain under "Legal Control" of the Sponsor during the term of the Second Revised Limited Partnership. (Ex. J, Revised Limited Partnership Agreement, p. 21, § 7.17).

202.   The Revised Limited Partnership Agreement further required Mr. Tegethoff, as the Sponsor, to own, "directly or indirectly, at least eight and one-quarter percent (8.25%) of the beneficial ownership interests in the General Partner." (Ex. J, Revised Limited Partnership Agreement, p. 21, § 7.17).

203.   "Legal Control" was defined by the Revised Limited Partnership Agreement as "the power to exercise the authority, management and/or policies of [Old Hickory Partners], either directly or indirectly, both as an entity and as owner of its Partnership Interest and as the manager or managing member of the General Partner . . . ." (Ex. J, Revised Limited Partnership Agreement, p. 4).

**D.   OLD HICKORY PARTNERS FAILS TO PAY THE CONTRACTOR AND THE PROJECT IS DELAYED**

204.   During construction of the Project, Plaintiffs received weekly project reports reflecting pay applications or invoices from Brinkmann Constructors ("Brinkmann"), the Project's general contractor.

205.   The reports revealed that Brinkmann regularly had a significant amount of outstanding unpaid invoices, exceeding $20 million during May to June 2024 for work Brinkmann performed during construction.

ME1\59457812.v1

206. The Limited Partnership and Old Hickory Partners lacked the funds necessary to pay Brinkmann because Tegethoff Development and Mr. Tegethoff misappropriated Old Hickory Partners' funds and used them for purposes unrelated to the Project.

207. As explained *supra*, upon information and belief, Old Hickory Partners lacked the funds necessary to pay Brinkmann because of the "loans" made to Tegethoff Development by Old Hickory Partners.

208. The inability to timely pay Brinkmann significantly delayed the progression of the Project.

**E.      DUE TO THE "LOANS" TO TEGETHOFF DEVELOPMENT, OLD HICKORY PARTNERS FAILS TO FUND ITS FULL CAPITAL COMMITMENT**

209. By mid-2024, Old Hickory Partners still had not contributed its entire capital commitment to the Limited Partnership and was $4 million short of the total required by it under the Revised Limited Partnership Agreement (the "Four Million Dollar Deficit"). *See also* (Ex. H, Old Hickory Partners June 2024 Balance Sheet) (showing "other current asset" in amount of $4,087,495.84).

210. Old Hickory Partners lacked the funds necessary to satisfy the Four Million Dollar Deficit because Tegethoff Development and Mr. Tegethoff misappropriated Old Hickory Partners' funds and used them for purposes unrelated to the Project via the loans to Tegethoff Development.

211. Had Mr. Tegethoff not previously misappropriated funds belonging to Old Hickory Partners, Old Hickory Partners would have had enough cash on hand to make its full capital contribution to the Limited Partnership.

212. Instead, to save the Project and cover for Old Hickory Partners' capital shortfall, RGA agreed to increase its own capital contributions to cover the Four Million Dollar Deficit to allow the Project to continue and to pay Brinkmann's remaining outstanding invoices.

29

ME1\59457812.v1

Docusign Envelope ID: 3CED1AA8-00E3-465E-9604-333DE35484BD

**F.        THE DILUTION OF PLAINTIFFS' INTEREST IN OLD HICKORY PARTNERS**

213.    To facilitate RGA's additional contribution, Old Hickory Partners and RGA executed a second amendment to the Revised Limited Partnership Agreement which increased RGA's real capital commitment and decreased Old Hickory Partners' real capital commitment. *See* (Exhibit K, Second Revised Limited Partnership Agreement).

214.    According to the Second Revised Limited Partnership Agreement, RGA's capital commitment and contributions were $31,573,918, resulting in an 80.57% capital percentage and a 84.20% percentage interest. (Ex. K, Second Revised Limited Partnership Agreement, Sch. A).

215.    According to the Second Revised Limited Partnership Agreement, Old Hickory Partners' capital commitment and contributions were reduced to $7,615,074, resulting in a 19.43% capital percentage and a 15.80% percentage interest. (Ex. K, Second Revised Limited Partnership Agreement, Sch. A).

216.    This is $2,848,387 less than Old Hickory Partners' capital commitment and contributions prior to the Four Million Dollar Deficit. *Compare* (Ex. K, Second Revised Limited Partnership Agreement, Sch. A) *with* (Ex. J, Revised Limited Partnership Agreement, Sch. A).

217.    The $2,848,387 difference is almost identical to the amount, if not for rounding, contributed by Plaintiffs to Old Hickory Partners, which was a combined $2,848,386.55. *Compare* (Ex. K, Second Revised Limited Partnership Agreement, Sch. A) *with* (Ex. J, Revised Limited Partnership Agreement, Sch. A).

218.    This strongly suggests (and will be confirmed in discovery), Plaintiffs' contribution to Old Hickory Partners (less a few cents) has been taken by Mr. Tegethoff or Tegethoff Development as a "loan" that, unlike other members' contributions, has not been repaid.

ME1\59457812.v1

219. In other words, other Old Hickory Partners' capital has been invested in the Project—albeit years too late. Plaintiffs' investment, however, is *still* not in the Project and Plaintiffs may not actually possess any interest in the Project.

220. The Revised Limited Partnership Agreement includes the same language requiring Mr. Tegethoff to remain in control of Old Hickory Partners or otherwise default under the Second Revised Limited Partnership Agreement. (Ex. K, Revised Limited Partnership Agreement, p. 21, § 7.17).

221. Because Old Hickory Partners' interest in the Limited Partnership was diluted at the project-level, each member's interest in the Project (via their investments in Old Hickory Partners) was also diluted in accordance with each member's respective contributions.

222. Old Hickory Partners did not vote on the dilution. *See* (Ex. I, Revised Operating Agreement, p. 8, § 1.9(BB) (requiring a vote for decisions constituting "Major Decision Approval")).

223. Plaintiffs were not, and have never been, in voting default, as defined by the Revised Operating Agreement, when the dilution took place.

224. Moreover, based on the Second Revised Limited Partnership Agreement, one would expect there would be a corresponding amendment to the Revised Operating Agreement for Old Hickory Partners, which would have required Major Decision Approval, or some form of written consent. (Ex. I, Revised Operating Agreement, p. 27, § 6.3(B)(4)).

225. Plaintiffs are unaware of any second Revised Operating Agreement, written consents, or amendments.

226. This dilution is the direct result of the undocumented and unauthorized "loans" Mr. Tegethoff fraudulently issued to Tegethoff Development from Old Hickory Partners.

31

ME1\59457812.v1

227. Moreover, Mr. Tegethoff has taken steps to actively conceal his fraud and tortious conduct by refusing to communicate with Plaintiffs regarding the affairs of Old Hickory Partners and has refused to provide financial statements for Old Hickory Partners as requested by Plaintiffs and required by the Revised Operating Agreement. (Ex. I, Revised Operating Agreement, p. 21, § 5.1(A)).

228. On or about December 16, 2025, Plaintiffs demanded Old Hickory Partners provide Plaintiffs access to its books and records. *See* (Exhibit L, Demand for Inspection).

229. Old Hickory Partners failed to respond.

**G.    MR. TEGETHOFF'S SCHEMES CONTINUE**

230. Plaintiffs have only recently discovered the true nature of all of Defendants' conduct.

231. And Plaintiffs only discovered the extent of Mr. Tegethoff's fraud and his efforts to conceal it due to litigation in Indiana involving affiliates of Plaintiffs and Mr. Tegethoff and Tegethoff Development.

*The Indiana Litigation*

232. On October 24, 2025, business entities owned in whole or in part by the Bushes, and not parties to this litigation (collectively, the "Indiana Plaintiffs"), obtained a $13,000,000 agreed judgment (the "Judgment") against Mr. Tegethoff, Tegethoff Development, and another related entity (collectively, the "Indiana Defendants") in the Marion County, Indiana Commercial Court, Cause No. 49D01-2312-PL-049785 (the "Indiana Litigation").

233. As of the filing of this Second Verified and Amended Complaint, the Judgment remains unsatisfied.

ME1\59457812.v1

Docusign Envelope ID: 3CED1AA8-00E3-465E-9604-333DE35484BD

234. As a part of the Indiana Litigation, the Indiana Defendants produced in discovery several documents related to the Project, including bank statements, general ledgers, balance sheets, and correspondence.

235. In accordance with a protective order entered in the Indiana Litigation, the Indiana Defendants designated these documents as either confidential or attorneys' eyes only.

236. On April 23, 2026, the Indiana court entered an order de-designating these specific documents only for use in the instant litigation. *See* (Exhibit M, April 23, 2026, Order, p. 1).

237. These documents reveal the true extent of Mr. Tegethoff's schemes.

*The Commerce Bank Correspondence*

238. Moreover, according to correspondence from Commerce Bank dated December 8, 2025, Mr. Tegethoff did not disclose the existence of (or agreement to) the Judgment to Commerce Bank, in violation of the Limited Partnership's construction loan. *See* (Exhibit N, Commerce Bank Letter, p. 1).

239. Specifically, Commerce Bank was made aware of the Judgment "without input" from Mr. Tegethoff and Tegethoff Development, which "at a minimum violates the spirit of not only the relationship between [Mr. Tegethoff and Tegethoff Development] and the Lenders but the terms and conditions of the Loan Documents as well." (Ex. N, Commerce Bank Letter, p. 1).f

240. If the Judgment remains unpaid, the Judgment is an event of default under the Limited Partnership and Commerce Bank's loan agreement. (Ex. N, Commerce Bank Letter, pp. 1-2).

241. Upon information and belief, the loan agreement between the Limited Partnership and Commerce Bank is now in forbearance.

ME1\59457812.v1

242. Upon information and belief, none of the members of Old Hickory Partners were aware of the December 8, 2025, correspondence from Commerce Bank until recently.

243. By agreeing to the Judgment, refusing to apprise Commerce Bank of the existence of the Judgment, and refusing to satisfy it, Mr. Tegethoff continues to breach his obligations owed to Plaintiffs.

244. Should Commerce Bank exercise its remedies for default under the loan agreement, Plaintiffs will suffer additional harm.

**H. DEMAND ON MR. TEGETHOFF WOULD BE FUTILE**

245. This action is not a derivative action, but even if it was, demand on Mr. Tegethoff would be futile.

246. It would be futile to make a demand on Mr. Tegethoff, manager of Old Hickory Partners, to bring an action against himself for harm done to Old Hickory Partners, because Mr. Tegethoff would necessarily have to bring it against himself, which is nonsensical.

247. It would be futile to make a demand on Old Hickory Partners to bring an action against Mr. Tegethoff for harm done by Mr. Tegethoff to Old Hickory Partners when Mr. Tegethoff is directly involved with Old Hickory Partners by virtue of his ownership of Tegethoff Development and as a beneficiary of the AET Trust.

248. It would be futile to make a demand on Old Hickory Partners to investigate or bring a claim against Mr. Tegethoff because he so dominates and controls Old Hickory Partners that any such request would be subject to his full control.

249. It would be futile to seek removal of Mr. Tegethoff as manager of Old Hickory Partners because Tegethoff Development and the AET Trust, entities associated with Mr. Tegethoff, could prevent the removal.

34

ME1\59457812.v1

250. It would further be futile to seek removal of Mr. Tegethoff as manager of Old Hickory Partners because removal of Mr. Tegethoff as manager would trigger an event of default under the Second Revised Limited Partnership Agreement.

251. According to the Second Revised Limited Partnership Agreement, Mr. Tegethoff is the "Sponsor" of the Limited Partnership. (Ex. K, Second Revised Limited Partnership Agreement, p. 5).

252. The Second Revised Limited Partnership Agreement further provides that Old Hickory Partners must remain under "Legal Control" of the Sponsor during the term of the Second Revised Limited Partnership. (Ex. K, Second Revised Limited Partnership Agreement, p. 21, § 7.17).

253. The Second Revised Limited Partnership Agreement further requires Mr. Tegethoff, as the Sponsor, to own, "directly or indirectly, at least eight and one-quarter percent (8.25%) of the beneficial ownership interests in the General Partner." (Ex. K, Second Revised Limited Partnership Agreement, p. 21, § 7.17).

254. "Legal Control" is defined by the Second Revised Limited Partnership Agreement as "the power to exercise the authority, management and/or policies of [Old Hickory Partners], either directly or indirectly, both as an entity and as owner of its Partnership Interest and as the manager or managing member of the General Partner . . . ." (Ex. K, Second Revised Limited Partnership Agreement, p. 4).

255. Removing Mr. Tegethoff as manager of Old Hickory Partners would necessarily mean Mr. Tegethoff, as Sponsor, no longer had Legal Control over Old Hickory Partners.

256. Removal of Mr. Tegethoff as manager of Old Hickory Partners would thus violate Section 7.17 of the Second Revised Limited Partnership Agreement and constitute an event of

ME1\59457812.v1

Docusign Envelope ID: 3CED1AA8-00E3-465E-9604-333DE35484BD

default under the Second Revised Limited Partnership Agreement. (Ex. K, Second Revised Limited Partnership Agreement, p. 18, § 7.07(a)(8)).

257.    Old Hickory Partners committing an event of default under the Second Revised Limited Partnership Agreement would be catastrophic and eliminate the reasonableness of any remedies available to the members of Old Hickory Partners under the Revised Operating Agreement.

258.    Moreover, as described above, Mr. Tegethoff has withheld information from the members of Old Hickory Partners and purposefully and knowingly omitted material facts and information.

259.    Mr. Tegethoff has refused to keep Plaintiffs abreast of key developments and has refused to provide Plaintiffs access to Old Hickory Partners' books and records.

260.    Moreover, any demand on Mr. Tegethoff and Old Hickory Partners would be useless and unavailing because Mr. Tegethoff has committed fraudulent acts.

261.    Mr. Tegethoff's fraudulent acts, as described above, constitute *ultra vires* acts that could never be ratified by the other members of Old Hickory Partners.

262.    Therefore, Plaintiffs have no other avenue of recovery and have exhausted all realistic and available remedies available to them.

*Plaintiffs' Injury is Individualized*

263.    The injury to Plaintiffs is individualized and this is not merely an action to recover corporate funds.

264.    Although both Plaintiffs and their fellow members of Old Hickory Partners have suffered due to Mr. Tegethoff's fraudulent conduct, Plaintiffs' injuries are individualized because,

36

ME1\59457812.v1

all "loans" owed to Old Hickory Partners have been satisfied—except for the "loan" representing Plaintiffs' investment.

265. By refusing to pay back the "loan" to Tegethoff Development constituting Plaintiffs' funds, Mr. Tegethoff has effectively and permanently reduced Plaintiffs' interest in Old Hickory Partners unilaterally, unlike that of other members.

266. Therefore, even considering the dilution, there is still an outstanding liability on Old Hickory Partners' books representing almost the exact amount of funds Plaintiffs invested.

267. This harm is distinct and unique from the harm suffered by the other members of Old Hickory Partners.

268. Plaintiffs are all too familiar with Mr. Tegethoff singling them and their affiliates out.

269. As explained *supra*, affiliates of Plaintiffs have already suffered at the hands of Mr. Tegethoff and there is no indication this case is to be any different.

## COUNT ONE
### (Breach of Contract against Jeffrey J. Tegethoff)

270. Plaintiffs incorporate by reference the foregoing paragraphs as if fully restated herein.

271. The Revised Operating Agreement is a valid and enforceable contract entered into by Plaintiffs and Mr. Tegethoff, as manager of Old Hickory Partners.

272. Section 5.4 of the Revised Operating Agreement requires funds belonging to Old Hickory Partners to be deposited in a bank account and such funds or assets are not to be commingled with those of any other person. (Ex. E, Revised Operating Agreement, p. 24, § 5.4).

ME1\59457812.v1

273. Section 6.3(A)(2) of the Revised Operating Agreement prohibits, without the consent of all members, Mr. Tegethoff from possessing any of Old Hickory Partners' property. (Ex. I, Revised Operating Agreement, p. 26, § 6.3(A)(2)).

274. Section 6.6(A) of the Revised Operating Agreement makes Mr. Tegethoff liable to Plaintiffs for his misconduct. (Ex. I, Revised Operating Agreement, p. 29, § 6.6(A)).

275. The Revised Operating Agreement defines "Misconduct" as an intentional breach of the Revised Operating Agreement and/or bad faith or willful misconduct. (Ex. I, Revised Operating Agreement, p. 29, § 6.6(A)).

276. Although Mr. Tegethoff was given broad authority, the Revised Operating Agreement places several restrictions on his authority, including that Mr. Tegethoff could not, without the consent of all members, "possess [Old Hickory Partners'] property, or assign rights in specific [Old Hickory Partners' property] in trust for creditors . . . ." (Ex. I, Revised Operating Agreement, p. 26, § 6.3(A)(2)).

277. The Revised Operating Agreement also prevents Mr. Tegethoff from taking certain actions on behalf of Old Hickory Partners with respect to the Limited Partnership. (Ex. I, Revised Operating Agreement, p. 27, § 6.3(A)(8)).

278. Moreover, pursuant to section 6.3(B) of the Revised Operating Agreement, matters considered "Major Decisions" require "Major Decision Approval," which means that a certain number of membership interests in Old Hickory Partners were required to approve the action. (Ex. I, Revised Operating Agreement, p. 27, § 6.3(B)(2)).

279. The Revised Operating Agreement defines "Major Decision Approval" as "the approval of a Company action or decision by the Class A and Class B Members, voting together as a single class, owning more than sixty-five percent (65%) of the Initial Ownership Percentages

38

ME1\59457812.v1

held by Members who are not then in Voting Default, which must also include the approval of one or more Manager." (Ex. I, Revised Operating Agreement, p. 8, § 1.9(BB)).

280. Section 6.3(B)(2) of the Revised Operating Agreement considers "agree[ing] to vote in favor of, on behalf of [Old Hickory Partners] under the [Old Hickory Village Limited Partnership Agreement]" and any amendments thereto a decision requiring "Major Decision Approval." (Ex. I, Operating Agreement, 27. 8, § 6.3(B)(2)(4)).

281. The Revised Operating Agreement defines "Voting Default" as at the time a vote would be taken, such member "(1) has committed or is the subject of Misconduct; (2) is the subject of a Guarantor Event, or (3) has Transferred or attempted to Transfer its Interest in violation of Article VII . . . ." (Ex. I, Revised Operating Agreement, p. 8, § 1.9(NN)).

282. The Revised Operating Agreement provides that if "any party obtains a judgment against any other party by reason of breach of [the Revised Operating Agreement], a reasonable attorney's fee as fixed by the court shall be included in such judgment." (Ex. I, Revised Operating Agreement, p. 40, § 9.5(A)).

283. Plaintiffs have never been in Voting Default.

284. Plaintiffs have never voted to approve Mr. Tegethoff's commingling of assets, possession of Old Hickory Partners' property, or dilution of Old Hickory Partners' interest in the Project.

285. Plaintiffs have never voted to approve Old Hickory Partners making "loans" to Tegethoff Development.

286. Plaintiffs have never been notified by Mr. Tegethoff or any of his entities about the circumstances leading to or the fact that there were changes to the Revised Limited Partnership Agreement that resulted in the dilution of Old Hickory Partners.

39

287. Mr. Tegethoff breached the Revised Operating Agreement by commingling funds belonging to Old Hickory Partners with funds belonging to himself and Tegethoff Development in violation of Sections 5.4 and 6.3 of the Revised Operating Agreement.

288. Mr. Tegethoff breached the Revised Operating Agreement by possessing Old Hickory Partners' property without the consent of all members in violation of Section 6.3(A)(2) of the Revised Operating Agreement.

289. Mr. Tegethoff breached the Revised Operating Agreement by "loaning" Plaintiffs' investment to Tegethoff Development without the consent of Plaintiffs.

290. Because Mr. Tegethoff, as manager of Old Hickory Partners, misused Old Hickory Partners' funds for his own benefit in a willful and malicious manner, and otherwise breached the Revised Operating Agreement, Mr. Tegethoff has committed misconduct and is liable to Plaintiffs pursuant to Section 6.6(A) of the Revised Operating Agreement.

291. Because Mr. Tegethoff, as manager of Old Hickory Partners, knowingly consented to entry of the Judgment in the Indiana Litigation, failed to apprise Commerce Bank of the Judgment, and has refused to satisfy the Judgment, Mr. Tegethoff has acted in a willful and malicious manner and has committed misconduct and is liable to Plaintiffs pursuant to Section 6.6(A) of the Revised Operating Agreement.

292. Mr. Tegethoff breached the Revised Operating Agreement by, as a part of a scheme to conceal his prior misappropriation of Old Hickory Partners' investor funds, agreeing to dilute Old Hickory Partners' interest in the Limited Partnership without conducting a vote of the Old Hickory Partners' members in violation of Section 6.3(A)(8) and 6.3(B)(2) of the Revised Operating Agreement.

40

ME1\59457812.v1

293.    As a direct and proximate result of each individual breach of the Revised Operating Agreement by Mr. Tegethoff, Plaintiffs have incurred damages in an amount to be proven at trial.

WHEREFORE, Plaintiffs, Solera Multifamily, LLC, and Hickory Investors, LLC, seek entry of judgment in their favor and against Defendant, Jeffrey J. Tegethoff, on this Count One, awarding them damages in amount to be proven at trial, plus costs and expenses, attorneys' fees, pre- and post-judgment interest, and all other appropriate relief.

## COUNT TWO
**(Breach of Fiduciary Duty against Jeffrey J. Tegethoff)**

294.    Plaintiffs incorporate by reference the foregoing paragraphs as if fully restated herein.

295.    Plaintiffs entered into the Revised Operating Agreement with Mr. Tegethoff as manager.

296.    As manager of Old Hickory Partners, Mr. Tegethoff has a duty to conduct the affairs of Old Hickory Partners in the best interests of Old Hickory Partners and owes fiduciary duties to Plaintiffs.

297.    By commingling funds owned by Old Hickory Partners with funds owned by Tegethoff Development, Mr. Tegethoff breached his fiduciary duties owed to Plaintiffs.

298.    By possessing Old Hickory Partners' property without the consent of all members of Old Hickory Partners, Mr. Tegethoff breached his fiduciary duties owed to Plaintiffs.

299.    By making "loans" to Tegethoff Development without the consent of Plaintiffs, Mr. Tegethoff breached his fiduciary duties owed to Plaintiffs.

300.    By committing misconduct, including using Old Hickory Partners' property for his own personal use and benefit, diluting Old Hickory Partners' interest in the Limited Partnership in the process, Mr. Tegethoff breached his fiduciary duties owed to Plaintiffs.

41

ME1\59457812.v1

301.    By committing further misconduct, including agreeing to the Judgment in the Indiana Litigation, failing to apprise Commerce Bank of the existence of the Judgment, and refusing to satisfy the Judgment, Mr. Tegethoff breached his fiduciary duties owed to Plaintiffs.

302.    By refusing to timely pay Brinkmann, Mr. Tegethoff breached his fiduciary duties owed to Plaintiffs.

303.    By refusing to communicate with Plaintiffs regarding the affairs of Old Hickory Partners, Mr. Tegethoff breached his fiduciary duties owed to Plaintiffs.

304.    Plaintiffs have been harmed by Mr. Tegethoff's fiduciary breaches.

305.    Because Mr. Tegethoff's conduct was intentional and outrageous due to Mr. Tegethoff's reckless indifference to the rights of Plaintiffs, Plaintiffs are entitled to compensatory and punitive damages in an amount to be proven at trial.

WHEREFORE, Plaintiffs, Solera Multifamily, LLC, and Hickory Investors, LLC, seek entry of judgment in their favor and against Defendant, Jeffrey J. Tegethoff, on this Count Two, awarding them damages in amount to be proven at trial, plus costs and expenses, post-judgment interest, and all other appropriate relief.

## COUNT THREE
### (Fraud in the Inducement against Jeffrey J. Tegethoff)

306.    Plaintiffs incorporate by reference the foregoing paragraphs as if fully restated herein.

307.    In his statements and through the Operating Agreement, Mr. Tegethoff induced Plaintiffs to purchase membership interests in Old Hickory Partners and represented to Plaintiffs that their investments in Old Hickory Partners would be contributed as capital to the Limited Partnership.

308.    These representations were false.

42

ME1\59457812.v1

309.     Mr. Tegethoff, as manager of Old Hickory Partners, also had a fiduciary duty to tell Plaintiffs that he did not intend to invest their full capital contributions in the Limited Partnership.

310.     Despite his duty otherwise, Mr. Tegethoff remained silent.

311.     Mr. Tegethoff, as manager of Old Hickory Partners, had a duty to tell Plaintiffs that he would instead "borrow" funds from Old Hickory Partners for his own personal use.

312.     Despite his duty otherwise, Mr. Tegethoff remained silent.

313.     Mr. Tegethoff, as manager of Old Hickory Partners, had a duty to tell Plaintiffs that he could not and would not reimburse Old Hickory Partners and would instead dilute Plaintiffs' interest in the Project to cover for his misdeeds.

314.     Despite his duty otherwise, Mr. Tegethoff remained silent.

315.     Mr. Tegethoff, by his omissions, induced Plaintiffs to purchase membership interests in Old Hickory Partners and represented to Plaintiffs that their investments in Old Hickory Partners would be contributed as capital to the Limited Partnership.

316.     These omissions constitute material misrepresentations for the purposes of a fraudulent inducement claim.

317.     These representations and omissions were material, because without them, Plaintiffs would not have purchased membership interests in Old Hickory Partners.

318.     At the time Mr. Tegethoff induced Plaintiffs to purchase membership interests in Old Hickory Partners as an ultimate investment in the Limited Partnership, in ignorance of the falsity of his statements, Mr. Tegethoff knew that he and his entity, Tegethoff Development, would use Plaintiffs' funds for his own personal benefit and that he and his entity, Tegethoff Development, would be unable to reimburse Old Hickory Partners' funds.

319.     Mr. Tegethoff did not use Plaintiffs' funds to invest in Old Hickory Partners.

43

Docusign Envelope ID: 3CFD1AA8-00E3-46FE-9604-333DE35484BD

320. Plaintiffs reasonably relied on Mr. Tegethoff's representations and omissions regarding Plaintiffs becoming members in Old Hickory Partners and the use of their capital contributions.

321. Plaintiffs had a right to rely on Mr. Tegethoff's representations.

322. As a direct and proximate cause of Mr. Tegethoff's false representations and omissions (including his silence when a duty to speak existed), Plaintiffs incurred damages in an amount to be proven at trial.

323. Because Mr. Tegethoff's conduct was intentional and outrageous due to Mr. Tegethoff's reckless indifference to the rights of Plaintiffs, Plaintiffs are entitled to compensatory and punitive damages in an amount to be proven at trial.

WHEREFORE, Plaintiffs, Solera Multifamily, LLC, and Hickory Investors, LLC, seek entry of judgment in their favor and against Defendant, Jeffrey J. Tegethoff, on this Count Three, either (1) awarding them damages in amount to be proven at trial, including punitive damages, attorneys' fees, costs and expenses, post-judgment interest, and all other appropriate relief; or (2) rescinding the Revised Operating Agreement as to Plaintiffs, Solera Multifamily, LLC, and Hickory Investors, LLC, declaring it unenforceable as to Plaintiffs, Solera Multifamily, LLC, and Hickory Investors, LLC, and directing Defendant, Jeffrey J. Tegethoff, to refund Plaintiffs, Solera Multifamily, LLC, and Hickory Investors, LLC's, investment.

## COUNT FOUR
### (Fraud against Jeffrey J. Tegethoff)

324. Plaintiffs incorporate by reference the foregoing paragraphs as if fully restated herein.

325. In his statements and through the Operating Agreement, Mr. Tegethoff induced Plaintiffs to purchase membership interests in Old Hickory Partners and represented to Plaintiffs

44

Docusign Envelope ID: 3CED1AA8-00E3-465E-9604-333DE35484BD

that their investments in Old Hickory Partners would be contributed as capital to the Limited Partnership.

326.    These representations were false.

327.    Alternatively, Mr. Tegethoff, as manager of Old Hickory Partners, had a fiduciary duty to tell Plaintiffs that he did not intend to invest their full capital contributions in the Limited Partnership.

328.    Despite his duty otherwise, Mr. Tegethoff remained silent.

329.    Mr. Tegethoff, as manager of Old Hickory Partners, had a duty to tell Plaintiffs that he would instead "borrow" funds from Old Hickory Partners for his own personal use.

330.    Despite his duty otherwise, Mr. Tegethoff remained silent.

331.    Mr. Tegethoff, as manager of Old Hickory Partners, had a duty to tell Plaintiffs that he could not and would not reimburse Old Hickory Partners and would instead dilute Plaintiffs' interest in the Project to cover for his misdeeds.

332.    Despite his duty otherwise, Mr. Tegethoff remained silent.

333.    Mr. Tegethoff, by his omissions, induced Plaintiffs to Plaintiffs to purchase membership interests in Old Hickory Partners and represented to Plaintiffs that their investments in Old Hickory Partners would be contributed as capital to the Limited Partnership.

334.    These omissions constitute material misrepresentations for the purposes of a fraud claim.

335.    These representations and omissions were material, because without them, Plaintiffs would not have purchased membership interests in Old Hickory Partners.

336.    At the time Mr. Tegethoff induced Plaintiffs to purchase membership interests in Old Hickory Partners as an ultimate investment in the Limited Partnership, in ignorance of the

45

Docusign Envelope ID: 3CFD1AA8-00E3-465E-9604-333DE35484BD.

falsity of his statements, Mr. Tegethoff knew that he and his entity, Tegethoff Development, would use Plaintiffs' funds for his own personal benefit and that he and his entity, Tegethoff Development, would be unable to reimburse Old Hickory Partners' funds.

337.    After the inducement of Plaintiffs to invest in Old Hickory Partners, Mr. Tegethoff did not use Plaintiffs' funds to invest in Old Hickory Partners.

338.    Instead, Mr. Tegethoff used Plaintiffs' "investment" to benefit himself and Tegethoff Development and essentially caused Plaintiffs to "invest" in Tegethoff Development.

339.    Plaintiffs reasonably relied on Mr. Tegethoff's representations and omissions regarding Plaintiffs becoming members in Old Hickory Partners and the use of their capital contributions.

340.    Plaintiffs had a right to rely on Mr. Tegethoff's representations.

341.    As a direct and proximate cause of Mr. Tegethoff's false representations and omissions (including his silence when a duty to speak existed), Plaintiffs incurred damages in an amount to be proven at trial.

342.    Because Mr. Tegethoff's conduct was intentional and outrageous due to Mr. Tegethoff's reckless indifference to the rights of Plaintiffs, Plaintiffs are entitled to compensatory and punitive damages in an amount to be proven at trial.

WHEREFORE, Plaintiffs, Solera Multifamily, LLC, and Hickory Investors, LLC, seek entry of judgment in their favor and against Defendant, Jeffrey J. Tegethoff, on this Count Four, awarding them damages in amount to be proven at trial, including costs and expenses, post-judgment interest, and all other appropriate relief.

ME1\59457812.v1

## COUNT FIVE
### (Negligent Misrepresentation against Jeffery J. Tegethoff)

343. Plaintiffs incorporate by reference the foregoing paragraphs as if fully restated herein.

344. Plaintiffs and Mr. Tegethoff are engaged in a fiduciary relationship by virtue of his status as manager of Old Hickory Partners.

345. As discussed *supra*, Mr. Tegethoff has exclusive control and knowledge regarding the use and investment of Old Hickory Partners' funds.

346. The fiduciary relationship that exists between Mr. Tegethoff and Plaintiffs imposes a duty on Mr. Tegethoff to impart correct information to Plaintiffs.

347. Mr. Tegethoff, on his own behalf and as manager of Old Hickory Partners, made statements that induced Plaintiffs to purchase membership interests in Old Hickory Partners as an ultimate investment in the Limited Partnership.

348. Mr. Tegethoff, on his own behalf and as manager of Old Hickory Partners, made material omissions that induced Plaintiffs to purchase membership interests in Old Hickory Partners as an ultimate investment in the Limited Partnership.

349. Plaintiffs reasonably relied on these statements and omissions in furtherance of investing in Old Hickory Partners.

350. Mr. Tegethoff's claimed specialization, through the Offering Memorandum, affords him a special position of trust with Plaintiffs such that their reliance on Mr. Tegethoff's negligent misrepresentations were justified.

351. As a result of Mr. Tegethoff's grossly negligent misrepresentations and omissions (including his silence when a duty to speak existed), Plaintiffs incurred damages in an amount to be proven at trial.

ME1\59457812.v1

352.    Because Mr. Tegethoff's conduct was intentional and outrageous due to Mr. Tegethoff's reckless indifference to the rights of Plaintiffs, Plaintiffs are entitled to compensatory and punitive damages in an amount to be proven at trial.

WHEREFORE, Plaintiffs, Solera Multifamily, LLC, and Hickory Investors, LLC, seek entry of judgment in their favor and against Defendant, Jeffrey J. Tegethoff, on this Count Five, awarding them damages in amount to be proven at trial, including costs and expenses, post-judgment interest, and all other appropriate relief.

## COUNT SIX
### (Securities Fraud against Jeffrey J. Tegethoff under Missouri Law)

353.    Plaintiffs incorporate by reference the foregoing paragraphs as if fully restated herein.

354.    RSMo. § 409.5-509(b) makes it unlawful to sell a security, "by means of an untrue statement of a material fact or an omission to state a material fact necessary in order to make the statement made, in light of the circumstances under which it is made, not misleading, the purchaser not knowing the untruth or omission and the seller not sustaining the burden of proof that the seller did not know and, in exercise of reasonable care, could not have known of the untruth or omission." RSMo. § 409.5-509(b).

355.    Under Missouri law, "security" means a note; stock; treasury stock; security future; bond; debenture; evidence of indebtedness ... investment contract; ... or, in general, an interest or instrument commonly known as a "security . . . ." RSMo. § 409.1-102(28).

356.    The membership interests in Old Hickory Partners qualify as securities under Missouri law.

357.    Mr. Tegethoff represented to Plaintiffs that their investments in Old Hickory Partners would be contributed as capital to the Limited Partnership in order to manipulate, use as

48

ME1\59457812.v1

a deceptive device, and defraud Plaintiffs into purchasing membership interests in Old Hickory Partners in violation of RSMo. § 409.5-509(b).

358. Mr. Tegethoff, as manager of Old Hickory Partners, had a duty to tell Plaintiffs that he did not intend to invest Plaintiffs' full capital contributions in the Limited Partnership, that he would instead "borrow" funds for Old Hickory Partners for his own personal use, and that he could not and would not reimburse Old Hickory Partners.

359. Mr. Tegethoff violated his duty and remained silent in order to manipulate, use as a deceptive device, and defraud Plaintiffs into purchasing shares of Old Hickory Partners in violation of RSMo. § 409.5-509(b).

360. Plaintiffs have suffered damages because their interest in Limited Partnership is significantly diluted and will result in a lower payout, due to Mr. Tegethoff's misrepresentations and omissions.

WHEREFORE, Plaintiffs, Solera Multifamily, LLC, and Hickory Investors, LLC, seek entry of judgment in their favor and against Defendant, Jeffrey J. Tegethoff, on this Count Six, awarding them damages in amount to be proven at trial, including attorneys' fees, costs and expenses, interest from the date of the purchase of their interests in Old Hickory Partners, LLC, post-judgment interest, and all other appropriate relief.

## COUNT SEVEN
**(Theft/Conversion against Jeffrey J. Tegethoff and Tegethoff Development, LLC)**

361. Plaintiffs incorporate by reference the foregoing paragraphs as if fully restated herein.

362. By receiving funds paid by Plaintiffs to purchase membership interests in Old Hickory Partners, Mr. Tegethoff and Tegethoff Development exercised unauthorized control, and

49

ME1\59457812.v1

continue to exercise unauthorized control, over Plaintiffs' funds in denial of Plaintiffs' rights to their funds.

363. Plaintiffs paid funds to the care of Mr. Tegethoff for the specific purpose of purchasing membership interests in Old Hickory Partners.

364. Mr. Tegethoff and Tegethoff Development were and are aware of the high probability that their control over Plaintiffs' funds was unauthorized because Mr. Tegethoff had a fiduciary duty to use Plaintiffs' funds for the benefit of Old Hickory Partners.

365. As a direct and proximate result of Mr. Tegethoff and Tegethoff Development's theft and/or conversion of Plaintiffs' funds, Plaintiffs have incurred damages in an amount to be proven at trial.

366. Unlike the other investors in Old Hickory Partners, Plaintiffs' funds remain missing.

WHEREFORE, Plaintiffs, Solera Multifamily, LLC, and Hickory Investors, LLC, seek entry of judgment in their favor and against Defendant, Jeffrey J. Tegethoff, in his capacity as sole member of Defendant, Tegethoff Development, LLC, and Defendant, Tegethoff Development, LLC, on this Count Seven, awarding them compensatory and punitive damages in to be proven at trial, plus costs and expenses, post-judgment interest, and all other appropriate relief.

## COUNT EIGHT
**(Unjust Enrichment against Jason J. Tegethoff as Trustee of AET 2021 Irrevocable Trust)**

367. Plaintiffs incorporate by reference the foregoing paragraphs as if fully restated herein.

368. Although Plaintiffs and the AET Trust are both parties to the Revised Operating Agreement, no contractual relationship exists between Plaintiffs and the AET Trust.

50

ME1\59457812.v1

Docusign Envelope ID: 3CED1AA8-00E3-465E-9604-333DE35484BD

369. Mr. Jason Tegethoff, as Trustee for the AET Trust, or the then-trustee, knowingly received property from Plaintiffs to personally benefit and enrich its trustee and beneficiaries.

370. Specifically, the AET Trust received funds that should have been invested in Old Hickory Partners, which were used to personally benefit and enrich its trustee and beneficiaries.

371. Mr. Jason Tegethoff, as Trustee for the AET Trust, or the then-trustee, received the benefit of Plaintiffs' property at Plaintiffs' expense as Plaintiffs' funds were to be invested in Old Hickory Partners, not used for the benefit of the AET Trust.

372. It would be unfair and unjust for Mr. Jason Tegethoff, or the then-trustee, as Trustee for the AET Trust, to retain the benefits it obtained at the expense of Plaintiffs as Plaintiffs' funds were to be invested in Old Hickory Partners, not used for the benefit of the AET Trust.

373. Plaintiffs' injury is unique as Plaintiffs' investment in Old Hickory Partners remains missing.

WHEREFORE, Plaintiffs, Solera Multifamily, LLC, and Hickory Investors, LLC, seek entry of judgment in their favor and against Defendant, Mr. Jason Tegethoff as Trustee for the AET 2021 Irrevocable Trust, on this Count Eight, awarding them damages in amount to be proven at trial, plus costs and expenses, post-judgment interest, and all other appropriate relief.

### COUNT NINE
**(Unjust Enrichment against Jeffrey J. Tegethoff and Anna E. Tegethoff as Trustees for the Mono Suerte Trust)**

374. Plaintiffs incorporate by reference the foregoing paragraphs as if fully restated herein.

375. No contractual relationship exists between Plaintiffs and the Mono Suerte Trust.

ME1\59457812.v1

Docusign Envelope ID: 3CFD1AA8-00E3-46FE-9604-333DE35484BD

376. Mr. Tegethoff and Mrs. Tegethoff, as Trustees for the Mono Suerte Trust, knowingly received property from Plaintiffs to make down payments on the purchase of a luxury home the Mono Suerte Trust owns for its own benefit and for the benefit of its beneficiaries.

377. Specifically, the Mono Suerte Trust received funds that should have been invested in Old Hickory Partners, which were used instead to personally benefit and enrich its trustee and beneficiaries.

378. It would be unfair and unjust for Mr. Tegethoff and Mrs. Tegethoff, as Trustees for the Mono Suerte Trust, to retain the benefits it obtained at the expense of Plaintiffs as Plaintiffs' funds were to be invested in Old Hickory Partners, not used for the benefit of the Mono Suerte Trust.

WHEREFORE, Plaintiffs, Solera Multifamily, LLC, and Hickory Investors, LLC, seek entry of judgment in their favor and against Defendants, Jeffrey J. Tegethoff and Anna E. Tegethoff as Trustees for the Mono Suerte Trust, on this Count Nine, awarding them damages in amount to be proven at trial, plus costs and expenses, post-judgment interest, and all other appropriate relief.

## COUNT TEN
### (Unjust Enrichment against Tegethoff Development Co, LLC)

379. Plaintiffs incorporate by reference the foregoing paragraphs as if fully restated herein.

380. No contractual relationship exists between Plaintiffs and Tegethoff Development Co.

381. Tegethoff Development Co received development fees for work it allegedly performed on behalf of the Project.

52

382. Through the misappropriation of funds by Tegethoff Development and Mr. Tegethoff, Tegethoff Development Co took the development fees from the Limited Partnership, leaving Old Hickory Partners cash poor as a result.

383. Tegethoff Development Co, through its single member, Mr. Tegethoff, knew Mr. Tegethoff and Tegethoff Development did not have the ability to replace the misappropriated funds.

384. Yet Tegethoff Development Co continued to knowingly receive property from the Limited Partnership, despite knowing the Project was being damaged and knowing Old Hickory Partners lacked sufficient funds to meet its obligations under the Revised Limited Partnership Agreement.

385. Tegethoff Development Co thus received the benefit of Plaintiffs' investment funds at Plaintiffs' expense.

386. It would be unfair and unjust for Tegethoff Development Co to retain the benefits it obtained at the expense of Plaintiffs.

WHEREFORE, Plaintiffs, Solera Multifamily, LLC, and Hickory Investors, LLC, seek entry of judgment in their favor and against Defendant, Tegethoff Development Co, LLC, on this Count Ten, awarding them damages in amount to be proven at trial, plus costs and expenses, post-judgment interest, and all other appropriate relief.

## COUNT ELEVEN
### (Unjust Enrichment against Tegethoff Development, LLC)

387. Plaintiffs incorporate by reference the foregoing paragraphs as if fully restated herein.

388. No contractual relationship exists between Plaintiffs and Tegethoff Development.

53

ME1\59457812.v1

Docusign Envelope ID: 3CED1AA8-00E3-46FE-9604-333DE35484BD

Case 4:25-cv-03787-JMB Doc # 40 Filed: 06/17/26 Page: 54 of 58 PageID #:
Case 26-04029 Doc 35-3 Filed 07/20/26 Entered 07/20/26 16:33:47 Exhibit
Exhibit C 1884 Pg 54 of 58

389.     Tegethoff Development knowingly received property from Plaintiffs to satisfy its own obligations unrelated to the Project, solely for its own benefit and for the benefit of its sole member, Mr. Tegethoff.

390.     Specifically, Tegethoff Development received funds that should have been invested in Old Hickory Partners, which were used instead to personally benefit and enrich it and its sole member, Mr. Tegethoff.

391.     It would be unfair and unjust for Tegethoff Development to retain the benefits it obtained at the expense of Plaintiffs as Plaintiffs' funds were to be invested in Old Hickory Partners, not used for the benefit of Tegethoff Development.

WHEREFORE, Plaintiffs, Solera Multifamily, LLC, and Hickory Investors, LLC, seek entry of judgment in their favor and against Defendant, Tegethoff Development, LLC, on this Count Eleven, awarding them damages in amount to be proven at trial, plus costs and expenses, post-judgment interest, and all other appropriate relief.

## COUNT TWELVE
### (Request for Declaratory Relief)

392.     Plaintiffs incorporate by reference the foregoing paragraphs as if fully restated herein.

393.     Section 6.1(B) of the Revised Operating Agreement provides Mr. Tegethoff may be removed as manager "at any time for Misconduct by a decision to do so by any Member." (Ex. I, Revised Operating Agreement, p. 24, § 6.1(B)).

394.     Mr. Tegethoff has committed misconduct in his role as manager of Old Hickory Partners by commingling funds belonging to Old Hickory Partners with funds belonging to himself, Tegethoff Development, the AET Trust, and the Mono Suerte Trust, by possessing Old Hickory Partners' property without the consent of all members of Old Hickory Partners, by

54

ME1\59457812.v1

misusing and converting/stealing Old Hickory Partners' funds for his own benefit, making unauthorized "loans" to Tegethoff Development, by staying silent when he had a duty to speak, and by failing to conduct a vote of the Old Hickory Partners' members regarding Old Hickory Partners' membership interest in the Limited Partnership.

395. Mr. Tegethoff has further committed misconduct by agreeing to the Judgment in the Indiana Litigation, failing to apprise Commerce Bank of the existence of the Judgment, and refusing to satisfy it.

396. The dispute between the parties is a 'case or controversy' pursuant to Article III of the United States Constitution.

397. Plaintiffs are entitled to a declaration that Mr. Tegethoff has acted fraudulently and/or has engaged in willful misconduct such that Mr. Tegethoff must be removed as Old Hickory Partners' manager and that they are entitled to seek to recover any liability owed to them caused by Mr. Tegethoff's fraudulent and/or willful misconduct.

WHEREFORE, Plaintiffs, Solera Multifamily, LLC, and Hickory Investors, LLC, seek entry of judgment in their favor and against Defendant, Jeffrey J. Tegethoff, declaring that Defendant, Jeffrey J. Tegethoff, engaged in fraud and/or willful misconduct and that Defendant, Jeffrey J. Tegethoff, must be removed as manager of Old Hickory Partners, LLC in accordance with the Revised Operating Agreement, that Plaintiffs, Solera Multifamily, LLC, and Hickory Investors, LLC are entitled to seek to recover any liability owed to Plaintiffs, Solera Multifamily, LLC and Hickory Investors, LLC, and Old Hickory Partners, LLC caused by Defendant, Jeffrey J. Tegethoff's, fraudulent or willful misconduct, and all other appropriate relief.

ME1\59457812.v1

Docusign Envelope ID: 3CED1AA8-00E3-465E-9604-333DE35484BD

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs, Solera Multifamily, LLC, and Hickory Investors, LLC, pray for relief as follows:

a.      Judgment in their favor and against Defendants, Jeffrey J. Tegethoff, Tegethoff Development, LLC, Jason J. Tegethoff as Trustee for the AET 2021 Irrevocable Trust, Jeffrey J. Tegethoff and Anna E. Tegethoff as Trustees for the Mono Suerte Trust, and Tegethoff Development Co, LLC;

b.      An award to Plaintiffs, Solera Multifamily, LLC, and Hickory Investors, LLC, of all damages, compensatory and punitive, costs, attorneys' fees, prejudgment interest, post-judgment interest, and other amounts to which Plaintiffs, Solera Multifamily, LLC and Hickory Investors, LLC, are entitled by law and against Defendants, Jeffrey J. Tegethoff, Tegethoff Development, LLC, Jason J. Tegethoff as Trustee for the AET 2021 Irrevocable Trust, Jeffrey J. Tegethoff and Anna E. Tegethoff as Trustees for the Mono Suerte Trust, and Tegethoff Development Co, LLC;

c.      A declaration that Defendant, Jeffrey J. Tegethoff, engaged in fraud and/or willful misconduct and that Defendant, Jeffrey J. Tegethoff, must be removed as manager of Old Hickory Partners, LLC in accordance with Old Hickory Partners' Amended and Restated Operating Agreement; and

d.      All other relief that is appropriate.

**JURY DEMAND**

Plaintiffs, Solera Multifamily, LLC and Hickory Investors, LLC, demand a trial by jury on all issues so triable.

ME1\59457812.v1

Docusign Envelope ID: 3CED1AA8-00E3-465E-9604-333DE35484BD

## VERIFICATION

I state that I am a representative of both Plaintiffs in this action, that I have read the foregoing complaint and know the contents thereof, and that the same is true to my own knowledge, except as to matters therein stated to be alleged on information and belief, and as to those matters, I believe them to be true. I further state that I am authorized to sign this verification on Plaintiffs' behalf.

Date: 4/23/2026

By: *Shawn Bush*
— DocuSigned by:
21ADA2F445704C6...

Shawn Bush
Member, Solera Multifamily, LLC
Member, Hickory Investors, LLC

/s/ Clayton G. Kuhn

Clayton G. Kuhn (55222MO)
Corbin M. Robinson (74810MO)
SANDBERG PHOENIX & von GONTARD P.C.
701 Market Street, Suite 600
St. Louis, Missouri 63101
314-231-3332
314-241-7604 (fax)
ckuhn@sandbergphoenix.com
crobinson@sandbergphoenix.com

Aaron D. Grant, *pro hac vice*
Kaylin O. Cook, *pro hac vice*
McCARTER & ENGLISH, LLP
10 E. Main Street, Suite 200
Carmel, IN 46032
317-810-5500
agrant@mccarter.com
kcook@mccarter.com

*Attorneys for Plaintiffs*

ME1\59457812.v1

Docusign Envelope ID: 3CFD1AA8-00E3-465E-9604-333DE35484BD

## CERTIFICATE OF SERVICE

I hereby certify that on this 17th day of June, 2026, I served a true and correct copy of the foregoing via the Court's electronic filing system. Parties may access the foregoing via the Court's electronic filing system.

/s/ *Clayton G. Kuhn*

Clayton G. Kuhn

ME1\59457812.v1